IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HAMBURG, RUBIN, MULLIN, MAXWELL, & LUPIN, PC and ANDREW GRAU, *individually*;<br><br>         Plaintiffs/Petitioners,<br><br>                v.<br><br>WILLEM DE HERDT.<br><br>         Defendant/Respondents. | CASE NO.<br><br>PETITION FOR ORDER SEEKING DECLARATORY RELIEF |

Petitioners Hamburg, Rubin, Mullin, Maxwell, & Lupin, PC, ("HRMML") and Mr. Andrew Grau ("Grau") of Hamburg, Rubin, Mullin, Maxwell, & Lupin, PC, by and through their attorneys, petition this Court for Declaratory Relief on the following grounds:

## THE PARTIES/KEY INDIVIDUALS

1. Upon information and belief, Willem De Herdt ("De Herdt") is a French citizen, currently residing in France.

2. Apexco PPSi, LLC, a United States LLC with its registered office at 430 Caredean Drive, Horsham, PA 19044.

3. Mr. Lieven Gruwez ("Gruwez") is a Belgian National, residing at Maeldongen, 3, 9070, Heusden-Destelbergen, Belgium.

4. Mr. Bart Feys ("Feys") is a Belgian National and Naturalized US citizen residing at 301 Village Drive, apt. 338, King of Prussia, PA 19406.

5. Hamburg, Rubin, Mullin, Maxwell, & Lupin, PC, is a United States Professional Corporation with its registered office at 375 Morris Road, Lansdale, PA 19446.

6. Mr. Andrew Grau is a United States citizen and employee of Hamburg, Rubin, Mullin, Maxwell, & Lupin, PC, with its registered office at 375 Morris Road, Lansdale, PA 19446.

## JURISDICTION AND VENUE

7. This Court has jurisdiction under 28 U.S.C. § 1332 inasmuch as the amount in controversy exceeds the sum or value of $75,000, and is between citizens of Lansdale, PA and citizens of foreign states.

8. This Court also has jurisdiction under 9 U.S.C. § 203 because this action is among international parties falls under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards.

9. Respondents are subject to personal jurisdiction in this Court under 9 U.S.C. § 4 inasmuch as the parties are bound by the contract to adjudicate claims within this jurisdiction.

10. Venue is proper in the Eastern District of Pennsylvania under 28 U.S.C. § 1391(a) inasmuch as Respondents are subject to the personal jurisdiction of this Court and the parties have agreed by contract to adjudicate all claims within this jurisdiction.

## FACTUAL ALLEGATIONS

11. Gruwez is the key owner of Apexco in that he and Feys are equal owners of the LLC.

12. Gruwez is based in Belgium, while Feys is originally from Belgium, but has recently become a United States citizen and has lived in the U.S. for a number of years.

13. Grau, through HRMML, prepared the initial Operating Agreement for Apexco in 2012, at the request of Feys, and subsequently prepared an Amended Operating Agreement (the "Operating Agreement"). A true and correct copy of the Operating Agreement is attached hereto as Exhibit "A."

14. Section 14.11 of the Operating Agreement provides for governing law:

> **Governing Law:** This Agreement shall be construed in accordance with the laws of the Commonwealth of Pennsylvania, without giving effect to principles of conflicts of law thereunder. Any controversies relating to this Agreement shall be resolved in the court of applicable jurisdiction in Montgomery County, Pennsylvania or the Federal Court for the Eastern District of Pennsylvania.

Exhibit "A" at § 14.11.

15. After the formation of Apexco on or about March 9, 2012, Grau's role in Apexco was limited.

16. Grau would only become involved in Apexco's affairs when he was approached by Feys or Gruwez with a legal question, or if they needed copies of previously drafted legal documents

17. All of Grau's work for Apexco took place in the United States, and Grau never traveled to France at any point in furtherance of his role at Apexco.

18. Apexco was initially started with 50/50 ownership between Gruwez and Feys, Later, De Herdt became an investor in Apexco.

19. De Herdt thereafter made various investments into Apexco, totaling approximately $1,405,000.

20. Neither Grau nor HRMML were privy to, nor involved with, these investments to Apexco, and Grau did not review any of the investments prior to them being paid to Apexco.

21. In or around January 2014, Feys and Gruwez requested that HRMML prepare a Uniform Commercial Code Financing Statement ("UCC") on De Herdt's behalf to secure his investment interest in Apexco, which Grau prepared and filed on or about February 4, 2014.

22. That UCC secures De Herdt's interest in Apexco with "inventory of goods and raw materials purchased by [Apexco], all customer claims, and all finished goods and cash in company" listed as collateral.

23. On or around May 3, 2015, De Herdt rose to the rank of part owner of Apexco.

24. De Herdt, Feys, and Gruwez executed a Joinder to Apexco's Operating Agreement, pre-dated January 1, 2015, which assigns a 10% membership interest to De Herdt at the cost of $600,000 on a debt-to-equity basis. A true and correct copy of the Joinder is attached hereto as Exhibit "B".

25. Section 10 of the Joinder provides that it shall be construed and governed by the laws of the Commonwealth of Pennsylvania. See Exh. "B" at § 10.

26. The decision to make De Herdt a member was made by Gruwez and Feys, and Grau's involvement was limited to preparing the Joinder to the Operating Agreement and related documents pertaining the reassignment of interests among other Apexco members in order to accommodate De Herdt's new 10% interest.

27. On or about January 13, 2017, De Herdt attempted to email Grau to request that Grau amend his existing UCC to include all existing assets of Apexco as collateral.

28. Grau did not initially receive this email, as De Herdt mistakenly entered Grau's email address as agrau@hmml.com instead of his correct email address of agrau@hrmml.com.

29. Grau was not made aware of this request until February 7, 2017, when the same was forwarded to him by Feys.

30. After obtaining the consent of Feys and Gruwez, Grau prepared an amended UCC on De Herdt's behalf in accordance with his request, which was filed on or about March 30, 2017.

31. Sometime thereafter, Apexco began losing money, and started to be unable to pay its debts as they became due.

32. Neither Grau nor HRMML had any involvement in the business operations of Apexco, or the aforementioned loss of money associated therewith.

33. De Herdt thereafter unlawfully attempted to engage in self-help by stealing equipment from Apexco in order to satisfy his interest in the company.

34. In response to De Herdt's actions, On or about September 17, 2018, Gruwez on behalf of Apexco, filed suit against De Herdt in the Court of Common Pleas of Montgomery County, Pennsylvania (the "PA Complaint").

35. The PA Complaint alleges that De Herdt retained the services of Rajiv Gosain ("Gosain") to unlawfully engage in self-help by converting approximately $2,585,000 of assets from Apexco and by removing other assets from the Apexco premises for his own benefit, at the expense of other Apexco lenders.

36. Accordingly, the PA Complaint seeks damages in excess of $2,585,000, asserting separate causes of action for Conversion, Conspiracy, Intentional Interference with Contractual Relations, and Intentional Interference with Prospective Advantage against De Herdt and Gosain, and seeks issuance of a writ of seizure pursuant to Pa. R.C.P. 1075.1 to obtain possession of the Apexco assets taken, as well as a request for special relief pursuant to Pa. R.C.P. 1531 to enjoin Gosian and De Herdt from continuing to use or move Apexco assets.

37. De Herdt thereafter filed a Complaint in the French commercial Court, also known as *tribunaux de commerce*, following De Herdt's receipt of the above-referenced lawsuit against Gruwez, Feys, Apexco, Grau, and HRMML, in retaliation to the PA Complaint against De Herdt (the "French Complaint").

38. The French Complaint alleges, *inter alia*, that Gruwez, Grau, Feys "tricked" De Herdt into investing into Apexco, and executing the Operating Agreement and Joinder.

39. The French Complaint essentially presents two sets of arguments, the first of which are based in contract, and pertain to the various agreements entered into by De Herdt to invest in Apexco.

40. The second set of arguments advanced by Plaintiff are based in tort, and pertain to the allegedly fraudulent behavior perpetrated by Apexco, Gruwez, Feys, Grau, and HRMML.

41. The disputes which gave rise to both the PA Complaint and the French Complaint relate to the Operating Agreement and/or Joinder.

42. Both the Operating Agreement and Joinder explicitly provide that all disputes associated therewith shall be resolved under Pennsylvania law, within the Courts of the Commonwealth of Pennsylvania, or in the Eastern District of Pennsylvania.

43. A declaratory judgment is necessary in that Petitioners contend and Respondents deny the applicability of the governing law provisions of the Operating Agreement and Joinder.

## **REQUEST FOR RELIEF**

1. The Operating Agreement and Joinder are enforceable by this Court pursuant to the Federal Arbitration Act, 9, U.S.C. § 1 et seq., which specifically authorizes this Court, upon this Petition, to enter an Order Compelling Arbitration pursuant to Section 14.11 of the Operating Agreement.

2. The Operating Agreement and Joinder are enforceable by this Court pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201 et seq., which authorizes this Court, upon this Petition, to enforce the governing law provisions provided Section 14.11 of the Operating Agreement and Section 10 of the Joinder, respectively.

3. This Court is further authorized, pursuant to 28 U.S.C. § 2201(a), to enter a declaratory judgment that Respondents are required to abide by the Operating Agreement and Joinder, and that respondents are prohibited from further prosecuting their claims in the French lawsuit.

WHEREFORE, Petitioners respectfully request that this Court:

A. Enter a declaratory judgment, pursuant to 28 U.S.C. § 2201 that Respondents are prohibited from further prosecuting their claims in the French lawsuit;

B. Enter a declaratory judgment, pursuant to 28 U.S.C. § 2201 that Respondents are required to abide by the amended Operating Agreement and Joinder; and

C. Enjoin Respondents from pursuing claims in the French Lawsuit concerning disputes related to the amended Operating Agreement and Joinder, pursuant to the provisions of the same.

                                          MARGOLIS EDELSTEIN

                                          */s/ Kyle Wu, Esquire*_____
                                          KYLE WU, ESQUIRE
                                          MICHAEL RONALD MILLER, ESQUIRE
                                          Attorneys for Petitioners

Dated: January 11, 2022